LUCY P. CHAPMAN, EX'X., *vs.* NIANTIC NATIONAL BANK.

WASHINGTON—FEBRUARY 24, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Bills and Notes.  Endorsers.  Parties.*

A promissory note was made by A. to the order of B., endorsed by B. and by C.  The note was secured by a pledge of stock belonging to B.  It was discounted by defendant for the benefit of A.  B. died, and plaintiff became his executrix.  After protest of the note, defendant notified plaintiff that unless it was paid the stock would be sold.  Thereupon plaintiff paid the note, the defendant erased the name of C. from the back and delivered it, so altered, to plaintiff.  After judgment against A., wherein execution was unsatisfied, plaintiff sued C. and was nonsuited.  Plaintiff then brought an action of the case against defendant to recover for mutilation of the note, claiming that the name of C. was written on the note before the name of B., and that C. as to B. became a joint maker with A.:—

*Held,* that, as B. and C. both signed the note before it was issued, it was immaterial, as between them, which signed first.

*Held,* further, that, when the defendant discounted the note, as to it the parties were liable according to the places which their names respectively occupied, and the defendant had the right to demand payment of either and thereby release the parties following the one held, which was all the erasure amounted to.

*Held,* further, that the note never bound the parties as between themselves, and so the obliteration did not alter their relations.

*Held,* further, that any agreement of C. to become co-surety with B. for the payment of the note was as binding as ever, and plaintiff had an action on such agreement against C.

DOUGLAS, J.   The defendant discounted for the benefit of the maker a promissory note dated January 27, 1898, made by Eugene B. Pendleton to the order of Asher H. Chapman, endorsed Asher H. Chapman, James M. Pendleton.  The note was secured by a pledge of stocks belonging to Asher H. Chapman. Mr. Chapman died, and the plaintiff became his executrix.

After the note became due and had been duly protested, the defendant notified the plaintiff that, unless the note was paid, the stock would be sold. Thereupon the plaintiff paid the note, the defendant erased the name of James M. Pendleton from the back thereof and delivered it, so altered, to the plaintiff. The plaintiff brought suit against the maker on the note and obtained judgment, but the execution was returned wholly unsatisfied.

Again, the plaintiff sued James M. Pendleton upon the note, and judgment of nonsuit was entered against her.

(1)    She now sues the defendant, in an action of trespass on the case, to recover damages for the mutilation of the note.

After verdict for the plaintiff for one-half the value of the note, the defendant prays for a new trial on the general ground that the verdict is against the evidence, and also on account of alleged error in the admission and rejection of evidence and in instructions to the jury.

We see no ground on which the verdict can be supported. The note at the time of the mutilation was not the property of the plaintiff, but was in possession of the bank. Title to the paper did not pass from the bank to the plaintiff until it was delivered. If the agreement of the bank was to sell the plaintiff the note with the name of James M. Pendleton upon it, and this agreement was broken, the proper form of action to recover any damages which were suffered by the plaintiff thereby is assumpsit, not trespass on the case or trover.

But further, we are unable to see how the action of the bank violated any right or did any damage to the plaintiff.

The plaintiff claims that James M. Pendleton's name was written on the note before Asher H. Chapman's was, and that, therefore, James M. Pendleton as to Asher H. Chapman became a joint maker with Eugene B. Pendleton. This would have been true if Asher H. Chapman had discounted the note for either of the Pendletons, but he did nothing of the kind; he and James M. Pendleton both signed their names before the note was issued or had any validity as a contract. It was entirely immaterial, as between themselves, which party signed first in point of time. If Chapman had endorsed the note

before the maker signed it and afterwards the other signatures had been added, the relation of the parties to each other would have been the same. When the bank discounted the note, then, as to the bank and all subsequent purchasers, the paper represented a valid contract and the parties whose names were written on the paper became parties to the contract with obligations according to the places which their names respectively occupied. So long as the note was in the hands of the bank it signified in law that Eugene B. Pendleton as maker promised to pay Asher H. Chapman, and Chapman promised to pay James M. Pendleton, and James M. Pendleton promised to pay the bank; and the bank had the right to demand or receive payment of either of the parties and thereby to release the parties following the one held. The bank was entitled to take the paper as it came to it and to hold the parties in the relative relations which they had voluntarily assumed. If it chose to release a second endorser by suing a prior party, the law gave it that privilege. What more was done by erasing the name of the second endorser?

The note never bound these parties as between themselves, and the obliteration of any or all their names or the total destruction of the note would not alter their relations to each other.

If, as there is evidence tending to show, James M. Pendleton agreed to become co-surety with his uncle for the payment of the note by his brother, and in pursuance of such agreement they endorsed this paper, that agreement is as binding now as ever. If Chapman's executrix paid the note, she has an action on the agreement for contribution from James M. Pendleton. Her right to recover does not depend upon James M. Pendleton's name continuing on the note, but on its having been put there under such an agreement; and the note is as good a piece of evidence with a line drawn through James M. Pendleton's signature as before.

These propositions are too elementary to require citations to support them, and are decisive of the case. The other questions raised, therefore, become immaterial.

The plaintiff's evidence has no tendency to establish any

claim upon the bank, and the case must be remanded to the Common Pleas Division with direction to enter judgment for the defendant.

*Thomas H. Peabody,* for plaintiff.

*Albert B. Crafts,* for defendant.